## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**TARA FORD, as court appointed**
**Guardian ad Litem for**
**VANESSA S.,**

        **Plaintiff,**

v.                                                                                                  Civ. No. 10-1253 JCH-ACT

**ROSA HUNNICUTT, in her individual capacity,**
**KENNETH WALTER HUNNICUTT, in his individual capacity,**
**CHERYL DUNFEE, in her individual capacity,**
**ANN HOLMES, in her individual capacity,**
**SUSAN DRAKE, in her individual capacity,**
**REBECCA HAWES, in her individual capacity,**
**YOLANDA BRIONES, in her individual capacity,**
**ELENA VELASCO, in her individual capacity,**
**DEAN MCDOUGAL, in his individual capacity,**
**CHILDREN, YOUTH & FAMILIES DEPARTMENT,**
**and WILLIAM DUNBAR, in his official capacity**
**as Secretary of the New Mexico Children, Youth**
**and Families Department,**

        **Defendants,**

**Consolidated with:**

**TARA FORD, as court appointed**
**Guardian ad Litem for**
**VANESSA S.,**

        **Plaintiff,**

v.                                                                                                  Civ. No. 11-0033 JCH-ACT

**ROSA HUNNICUTT, in her individual capacity,**
**KENNETH WALTER HUNNICUTT, in his individual capacity,**
**CHERYL DUNFEE, in her individual capacity,**
**ANN HOLMES, in her individual capacity,**
**SUSAN DRAKE, in her individual capacity,**
**REBECCA HAWES, in her individual capacity,**
**YOLANDA BRIONES, in her individual capacity,**
**ELENA VELASCO, in her individual capacity,**
**DEAN MCDOUGAL, in his individual capacity,**
**CHILDREN, YOUTH & FAMILIES DEPARTMENT,**
**and WILLIAM DUNBAR, in his official capacity**

**as Secretary of the New Mexico Children, Youth**
**and Families Department,**

        **Defendants.**

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants Children Youth and Families Department ("CYFD") and William Dunbar's *Motion for Summary Judgment on Count IX* [Doc. 60]. The Court, having considered the motion, briefs, exhibits, and relevant law, and being otherwise fully informed, finds that the motion should be GRANTED.

## BACKGROUND

Plaintiff Tara Ford serves as Guardian ad Litem for Vanessa S. ("Vanessa"). This case arises from Plaintiff's allegation that Vanessa was subjected to sexual abuse while living in a licensed foster home that later became her adoptive home, and that Children, Youth & Families Department ("CYFD") social workers failed to investigate or stop this abuse when they knew or should have known that it was occurring. At issue in this motion is whether Vanessa has a constitutionally protected property interest in records held by CYFD that relate to her foster care and adoption history. Plaintiff contends that CYFD's failure to provide Vanessa with all of her records upon the request of her attorney violated Vanessa's right to procedural due process and, as a practical matter, blocked her right of access to court and her right to seek redress from the government. *See* Complaint, attached as Ex. A to Doc. 1, at 23-24 ¶¶ 126-132.[1] In addition to seeking the records that Vanessa requested, Plaintiff also seeks attorney's fees pursuant to 42

---

[1] Plaintiff has filed a *Motion for Leave to File First Amended Complaint*. *See* Doc. 108. Briefing on this motion is not yet complete. However, whether or not Plaintiff is allowed to file her Amended Complaint will not affect the decision on this matter, as Count IX remains the same in both the initial Complaint and the proposed First Amended Complaint. *See* Ex. A, attached to Doc. 1, at ¶¶ 126-134; Ex. 1, attached to Doc. 108, at ¶¶ 124-132.

U.S.C. §§ 1983 and 1988, as Vanessa was forced to seek assistance of counsel in pursuing a remedy for alleged violations of her federal constitutional rights. *See id*. at 24 ¶¶ 133-34.

The facts relating to this conflict over records are largely undisputed, and the following background has been set out in Defendants' motion and admitted to by Plaintiff. *See* Deft. Mem. [Doc. 61] at 3-5; Pl. Resp. [Doc. 72] at 6-7.[2] On June 21, 1993, CYFD filed an abuse and neglect case in New Mexico's Third Judicial District, naming Vanessa's biological mother, Vanessa, her siblings, and the fathers of all of the named children. As part of this abuse and neglect case, a guardian ad litem was appointed for Vanessa. Vanessa was in CYFD's legal custody and foster care from 1993 until 1998. As a result of Vanessa's adoption, the abuse and neglect case was dismissed on April 17, 1998.

Almost ten years later, on or about June 26, 2007, one of Vanessa's attorneys in this matter submitted a letter to CYFD's Juvenile Justice Division stating that he represented Vanessa and requesting "all records in your possession." Ex. 4, attached to Doc. 61, at 1. Attached to the letter was an "Authorization to Disclose Health Information" signed by Vanessa. *Id*. at 2. This form only authorized release to her attorney of Vanessa's health information in the possession of the Juvenile Justice Division, as opposed to authorizing disclosure by "any CYFD location where the health information may exist." *Id*. At the time her attorney made this initial records request, Vanessa was still a minor. In August, 2007, Vanessa's attorney received

---

[2] In Plaintiff's Response, she puts forth six additional factual statements as well as attaching a Rule 56(f) affidavit seeking additional discovery on the manner in which certain records were held by CYFD and CYFD's policies regarding the requirement of judicial action prior to releasing certain records. *See* Doc. 72 at 7-8; Rule 56(f) affidavit, attached as Ex. A to Doc. 72. Because the Court rules, as a threshold matter, that Vanessa did not have a constitutionally protected property interest in these records, Plaintiff's additional statements and the additional discovery it seeks are not material because they are not determinative of the existence of a protected property interest in the records.

3

a letter from CYFD's General Counsel indicating that the records he had requested "are confidential under the Children's Code and may only be disclosed to certain classes of persons enumerated in the Code." Ex. 5, attached to Doc. 61. The letter asked for clarification on what matter or matters the attorney represented Vanessa, "as this may have a bearing on whether and to what extent we are able to provide you with the records you seek without a court order." *Id*. The record does not indicate that Vanessa's attorney ever provided this information.

On February 4, 2009, Vanessa's attorney emailed CYFD, indicating that Vanessa was interested in obtaining "the rest of her CYFD records, both her JJS [Juvenile Justice System] records and her PSD [Protective Services Division] records." Ex. 5-1, attached to Doc. 61.[3] This email contained no attached authorization for release of records. At the time her attorney made this request, Vanessa was no longer a minor. On February 11, 2009, CYFD's Records Custodian wrote an email to Vanessa's attorney, asking him to specify which documents he was seeking. He responded that he was seeking:

1. both types of her JJS records (she was at NMGS and was on probation, and apparently on parole)
2. her abuse neglect records from the early 1990s;
3. reports regarding referrals regarding abuse/neglect after her adoption in 1998;
4. her social security card;
5. a certified copy of her amended adoption decree; and
6. all adoption records that CYFD will provide to an adult adoptee.

Ex. 5-2, attached to Doc. 61.

CYFD responded to this request in a letter dated February 18, 2009. *See* Ex. 6, attached

---

[3] It is unclear what records, if any, had already been provided as a result of Vanessa's 2007 request, and unclear what response, if any, Vanessa's attorney provided to CYFD in response to their request seeking to clarify the basis on which he was representing her in connection with her 2007 request.

to Doc. 61, at 1.  With respect to the request for JJS records, CYFD responded that such records are confidential pursuant to NMSA § 32A-2-32(A) and may only be disclosed to persons enumerated in § 32A-2-32(B)(1)-(16).[4]  *Id*.  It noted that unauthorized release of records is a misdemeanor.  It explained that the agency could not tell if Vanessa or her attorney fell within any of the categories of persons to whom disclosure is permitted, but that § 32A-2-32(B)(17) permitted release of records upon a court order.  The letter therefore requested that Vanessa's attorney either "provide the legal authority for your request or a court order permitting CYFD to disclose the documents."  Similarly, with respect to the request for abuse/neglect records from the early 1990s and any records regarding abuse/neglect after adoption, the letter referenced the confidentiality provisions of NMSA § 32A-4-33 and the criminal penalties that attach to unauthorized release of records.  It again asked Vanessa's attorney to provide the legal authority for the request or for a court order permitting CYFD to disclose the documents.  *Id*. at 2.  The letter also indicated that CYFD generally stipulates or consents to court orders on the release of records to enable attorneys to investigate claims that their client may have, subject to appropriate restrictions on confidentiality consistent with state law.  *Id*.

With respect to the adoption records available to an adult adoptee, the letter did not refuse to provide the documents, but rather referred Vanessa's attorney to CYFD's Adoption Unit and indicated that the Adoption Unit, which had previously been in contact with Vanessa's attorney about his records request, was still awaiting information from him in order to process the request.  *Id*.  Plaintiff admits this characterization of the letter, but contends that the records that Vanessa sought were not solely available from the Adoption Unit, and were not part of the

---

[4] Effective July 1, 2009, subsection B (governing the class of people and institutions to whom JJS records may be released) was redesignated as subsection C.

abuse and neglect records.  *See* Pl. Resp. [Doc. 72] at 7 ¶ 12.

At this point, it appears that all of the records that Plaintiff initially sought have been provided to Plaintiff, subject to stipulated confidentiality orders.  The PSD records, including Vanessa's biological family file and a file containing records regarding Vanessa's foster/adoptive family, were the subject of a stipulated order finding that all parties have a legitimate interest in these records.  *See* Doc. 45 (motion for stipulated confidentiality order); Doc. 47 (stipulated confidentiality order).  In moving for entry of a stipulated confidentiality order, the parties agreed that these CYFD files constitute confidential records under NMSA § 32A-4-33 and § 8.27.2.31 N.M.A.C.  *See* Doc. 45 at 1 ¶ 3.  The parties' motion noted that the fact that CYFD was turning over the PSD documents did not resolve the dispute over whether the documents should have initially been turned over to Vanessa's attorney upon his request, and explicitly indicated that Plaintiff's willingness to enter into the agreement should not be interpreted as evidence that she was required to get a court order in order to be entitled to the documents and that CYFD's willingness to enter into the agreement should not be interpreted as evidence that Plaintiff was entitled to the documents in the manner previously requested.  *Id*. at 2-3 ¶¶ 6-7.  Although this initial stipulated order did not cover the JJS records, these records were the subject of a later stipulated order.  *See* Doc. 99 (joint motion for order for release of documents); Doc. 100 (stipulated confidentiality order concerning juvenile records).  Thus, it is the Court's understanding that Plaintiff is no longer seeking any of the documents that were mentioned in Count IX, as those records have been turned over pursuant to stipulated court orders, but that she is still seeking damages for CYFD's allegedly improper refusal to turn over the documents as initially requested without a court order.

## **DISCUSSION**

In the context of a procedural due process claim, a plaintiff must first demonstrate the existence and deprivation of a constitutionally protected property interest before that plaintiff can show that she is entitled to damages for failure to provide an appropriate level of process. *See Clark v. City of Draper*, 168 F.3d 1185, 1189 (10th Cir. 1999); *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998). In order for a property interest to be protected by the due process clause, it must "result[] from a legitimate claim of entitlement created and defined 'by existing rules or understandings that stem from an independent source such as state law.'" *Jacobs, Visconsi, & Jacobs Co. v. City of Lawrence*, 927 F.2d 1111, 1116 (10th Cir. 1991) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). A breach of state law or state procedural requirements is not, by itself, a violation of due process. *See Atencio v. Bd. of Educ.*, 658 F.2d 774, 779 (10th Cir. 1981). Instead, in order to establish a constitutionally protected right to certain procedures, a plaintiff must demonstrate the existence of a separate underlying substantive interest. *See Doyle v. Oklahoma Bar Ass'n,*, 998 F.2d 1559, 1570 (10th Cir. 1993). The "hallmark of property, the [Supreme] Court has emphasized, is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'" *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982) (citation omitted). In addition, the cases holding that state law created entitlements constitute property subject to due process protections have implicitly required that the rights created "have some ascertainable monetary value." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 766 (2005).

Plaintiff's claim ultimately fails because she cannot demonstrate that Vanessa has a constitutionally protected property interest in "all records or information" related to the abuse and neglect proceedings that led to her being in state custody or her juvenile justice records, all of which were held by divisions of CYFD. Plaintiff first contends that she is entitled to the

7

records requested pursuant to NMSA § 32A-4-33.  This section of the Abuse and Neglect Act governs the confidentiality of records pertaining to abuse and neglect proceedings and provides penalties for the unauthorized release of such records.  The first part of this section states that "[a]ll records or information concerning a party to a neglect or abuse proceeding, including social records, diagnostic evaluations, psychiatric or psychological reports...shall be confidential or closed to the public."  NMSA § 32A-4-33(A).  The second part of the section provides exceptions to the confidentiality rule, indicating that "[t]he records described in Subsection A of this section shall be disclosed only to the parties and: (1) court personnel; (2) court-appointed special advocates; (3) the child's guardian ad litem; (4) the attorney representing the child in an abuse or neglect action, a delinquency action, or any other action under the Children's Code...(16) any other person or entity, by order of the court, having a legitimate interest in the case or the work of the court."  NMSA § 32A-4-33(B).

The crux of Plaintiff's claim on this issue is her contention that the "shall be disclosed only to" language of Subsection B creates an entitlement to receive all records on behalf of every person within one of the enumerated classes.  However, this passive language serves only to limit the classes of persons to whom otherwise confidential CYFD records may legally be disclosed; it does not mandate disclosure to those who are arguably within the covered classes. As recognized by the Supreme Court, the term "shall" can mean "is authorized to" depending on the context in which it is used, such as when combined with the term "only."  *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 432.[5]

---

[5] The *Gutierrez de Martinez* Court provides two examples from the Federal Rules in which the term "shall" authorizes, but does not require, action: (1) under the version in place at the time of this decision, Fed. R. Civ. P. 16(e) stated that "[t]he order following a final pretrial conference shall be modified only to prevent manifest injustice," but use of the term shall did not

In contrast, the legislature clearly used active, rights-creating language in the very next section when it specified that "[a] parent, guardian or legal custodian whose child has been the subject of an investigation of abuse or neglect where no petition has been filed *shall have the right to* inspect any medical report, psychological evaluation, law enforcement reports or other investigative or diagnostic evaluation" and such persons "*shall also have the right* to the results of the investigation and *the right* to petition the court for full access to all department records and information..." NMAC § 32A-4-33(C) (emphasis added). Such rights-creating language is conspicuously absent in Subsection B, and the Court cannot say that the "shall be disclosed only to" language created a constitutionally protected property right in the records that the state then took away by failing to turn over all records to Vanessa's attorney when he first petitioned for them.

The litigants disagree over whether Vanessa can properly be considered a current "party," for purposes of Subsection B, to an abuse and neglect case that was terminated almost a decade before the 2007 records request, and disagree over whether an attorney who did not represent the child in the abuse and neglect proceedings falls within the category of those permitted to receive records. However, the Court need not reach these questions because, without the creation of a property right by the statute, Plaintiff cannot demonstrate a procedural due process violation.

Plaintiff also claims that Vanessa has a constitutionally protected liberty interest or

---

mandate that the order be modified; (2) under the version in place at the time of this decision, Fed. R. Crim. P. 11(b) stated that a *nolo contendere* plea "shall be accepted by the court only after due consideration of the views of the parties and the interest of the public in the effective administration of justice," but use of the term did not mandate that the court accept the plea or create a right in the proponent of the plea to have the plea accepted. 515 U.S. at 432 n.9.

substantive due process right to the records in CYFD's custody because they concern her personal and family history.  However, she cites no cases holding that an interest in acquiring such records without following any process is so fundamental as to create a constitutional entitlement, and the Court will not classify a right as "fundamental" when it does not appear to be recognized as such in the law.  The cases that Plaintiff cites for the proposition that persons have the right to keep their medical records confidential do not help her in this case, where she seeks unfettered access to a full panoply of records rather than seeking to keep them confidential.  *See* Pl. Resp. [Doc. 72] at 16 (citing *A.L.A. v. West Valley City*, 26 F.3d 989 (10th Cir. 1994) and *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 577 (3rd Cir. 1980)).  The *A.L.A.* court held that, by telling an arrestee's family and friends, jailer, and fellow prisoners that the arrestee was HIV positive, a police officer violated the arrestee's rights because "confidential medical information is entitled to constitutional privacy protection." *A.L.A.*, 26 F.3d at 990.  Similarly, *Westinghouse* concerned the court's recognition that personal medical records are private and should not be revealed to outside parties absent a sufficient showing of societal interest in their disclosure.  *Westinghouse*, 638 F.2d at 577-79.  These cases might be useful to Plaintiff if she were seeking to keep Vanessa's records from being disclosed to third parties, but they do not support her claim that CYFD is obligated under the Constitution to provide all records related to Vanessa to her representative upon request.

Nor do the cases Plaintiff cites regarding the fundamental right of individuals to make life choices mandate access to the requested records.  Plaintiff is correct that *Planned Parenthood v. Casey*, 505 U.S. 833, 851 (1992), found that, in the context of the choice of whether to have an abortion or to use contraception, life choices involving family relationships are a fundamental right upon which the state cannot intrude.  Plaintiff also correctly cites *Carey*

*v. Population Servs. Int'l*, 431 U.S. 678, 684-85 (1977) for the generic proposition that personal decisions related to marriage, procreation, family relationships, and child rearing implicate fundamental rights.  However, Plaintiff's argument that, by not automatically providing Vanessa with total access to records that could contain information that she could take into consideration in making "life choices," the State has interfered with her right to make those choices, stretches these cited cases beyond recognition.

## CONCLUSION

Because Plaintiff has failed to demonstrate either a constitutionally protected property right or a liberty interest in receiving all of the records in CYFD's possession that relate to Vanessa, she cannot show a due process violation.  **IT IS THEREFORE ORDERED** that Defendants' *Motion for Summary Judgment on Count IX* [Doc. 60] is GRANTED.


_____
UNITED STATES DISTRICT JUDGE